UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| MADELINE BERGERON<br>  o/b/o Matthew F. Bergeron<br><br>VS.<br><br>COMMISSIONER OF SOCIAL SECURITY | CIVIL ACTION NO. 06-1175<br><br>JUDGE DOHERTY<br><br>MAGISTRATE JUDGE METHVIN |

*REPORT AND RECOMMENDATION*

    Before the court is an appeal of the Commissioner's finding that Matthew Bergeron is not entitled to childhood disability benefits. Considering the administrative record, the briefs of the parties, and the applicable law, **IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED.**

*Background*

    Madeline Bergeron ("Bergeron") protectively filed an application for childhood supplemental security income benefits on behalf of her minor son, Matthew Bergeron ("Matthew"), on October 29, 2003, alleging disability since January 1, 2001 due to bipolar disorder and attention deficit hyperactivity disorder ("ADHD"). (Tr. 65). Matthew was 15 years old at the time of the application, and 17 at the time of the final administrative hearing. He is currently 18 years old.[1]

    Bergeron's application was initially denied. An administrative hearing was conducted on May 4, 2004. On February 23, 2006, an ALJ determined that, although Matthew has severe bipolar disorder, he is not disabled because his impairment does not meet or functionally equal a listed impairment. (Tr. 14). Bergeron appealed the decision to the Appeals Council, which

---

[1] His date of birth is September 26, 1988.

denied her request for review on May 12, 2006, (Tr. 4-6), making the ALJ's decision the final decision of the Commissioner from which Bergeron now appeals.

### *Assignment of Errors*

Bergeron raises two errors on appeal: (1) The ALJ erred in concluding that Matthew does not satisfy the requirements of Listing 112.04 for mood disorders, and specifically, bipolar disorder; and (2) the ALJ should have found Matthew's condition to be functionally equivalent to a listed impairment.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991).  The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion.  Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision.  Johnson, 864 F.2d at 343.

### *Childhood Disability Benefits*

3

The regulations provide a three-step sequential evaluation process for determining whether a child's impairment results in "marked and severe limitations." First, if the child is engaging in "substantial gainful activity," the child will be found not disabled regardless of medical condition, age, education, or work experience. 20 C.F.R. §416.924(b). Second, the child must have a severe impairment or impairments. If the child suffers from a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, the child will be considered to have no severe impairment, and therefore not disabled. Title 20 C.F.R. §416.924(c). Third, the child will be considered disabled if his or her impairment meets or equals a listed impairment in Appendix 1 of Subpart P of Part 404 of the chapter and meets the duration requirement.[2] 20 C.F.R. §416.924(d).

The ALJ concluded that Matthew has the severe impairment of bipolar disorder. Despite the fact that such an impairment clearly invokes the applicability of Listing 112.04 for mood disorders, the ALJ did not analyze Matthew's impairment in accordance with that, or any other listing. Instead, the ALJ conducted only an analysis of whether Matthew *functionally equals* a listed impairment. The ALJ offered no explanation for his failure to address the requirements of Listing 112.04.

In his "Findings of Fact and Conclusions of Law," the ALJ states:

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Appendix 1 (20 CFR 416.9245, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926(a).

---

[2] If a child's impairments do not meet a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairments to determine whether the functional limitations are disabling. 20 C.F.R. §416.926a (functional equivalence for children).

(Tr. 14).

In analyzing the issue of functional equivalence, the ALJ concluded that, although Matthew has marked limitation in the area of "interacting and relating with others," Matthew has "less than marked" limitations in the other areas of functioning, and that he therefore does not functionally equal a listed impairment. (Tr. 15-19). Based on the foregoing, the ALJ concluded that Matthew is not disabled.

After careful consideration of the record, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.

**1.    School Records**

The record shows that Matthew is quite intelligent and has scored high on standardized testing, but that his grades are not commensurate with his test scores. In an Individual Accommodation Plan prepared by the Lafayette Parish Local Educational Agency in November 2004 to determine whether Matthew qualified for the gifted program, Matthew was assessed to have strong intellectual functioning and tested in the 72nd percentile for reading skills, the 79th percentile for math skills, and the 93rd - 97th percentile for overall aptitude/intelligence. (Tr. 115-16). Matthew did not qualify for the gifted program. Matthew's 9th grade report card for the time period between September 26, 2003 through November 7, 2003 shows that Matthew had a B in Physical Science, Cs in English and Jr. ROTC, and Ds in Math and Geometry. (Tr. 55-56).

On December 8, 2003, Matthew's English teacher and counselor completed a Teacher Questionnaire. In it, the teacher reported that Matthew had "no problems" in the areas of "acquiring and using information," "interacting and relating with others," and "moving about and manipulating objects." (Tr. 87-91). However, the teacher reported that Matthew had an

5

"obvious problem" in the area of "attending and completing tasks," namely, his ability to "work at a reasonable pace and finish work on time." (Tr. 88). The teacher reported that when given extra time, Matthew finished his work successfully. (Id.).

The teacher also reported that Matthew had problems in certain areas of "caring for himself and others," including "slight problems" in the areas of "handling frustration appropriately," "being patient when necessary," "responding appropriately to changes in own mood;" "obvious problems" in the area of "identifying and appropriately asserting emotional needs;" and a "serious problem" in the area of "using appropriate coping skills to meet daily demands of school environment." (Tr. 91). The teacher noted that most of Matthew's problems in these areas seemed to occur outside of her classroom, and that she tried to help as often as she could by reminding Matthew to be patient, calming him, and helping him to view events in a different light. (Id.).

School records from Acadiana High School show that Matthew was disciplined on a number of occasions for not following school rules and for being disrespectful to teachers and fellow students. (Tr. 59-60, 121-23). These records include a number of suspensions.

The record shows that Matthew takes Adderall for his ADHD. (Tr. 100).

**2.      Medical Records**

Matthew was first diagnosed with bipolar disorder by Dr. Phillip Conrad Lafleur, a child psychiatrist, on December 6, 2000. (Tr. 147). At that time, Bergeron complained that Matthew was having behavior problems in school. Bergeron reported that Matthew had "up" moods, during which he was hyperactive and had a hard time controlling himself, as well as "down"

6

moods, during which Matthew would have a marked decrease in mood and would get angry and irritable.  (Id.).  Dr. Lafleur prescribed Depakote for bipolar disorder.  (Tr. 148).

Although it is undated, it appears that on January 30, 2001, Dr. Lafleur completed a "Snap-IV Rating Schedule," wherein he noted that Matthew demonstrates the following characteristics: often does not seem to listen to what is being said to him; often leaves seat in classroom or in other situations in which remaining seated is expected; often blurts out answers to questions before the questions have been completed; often talks excessively; has difficulty concentrating on school work or other tasks requiring sustained attention; frequently calls out in class or in other situations when silence is expected; needs a lot of supervision; often loses temper; often actively defies or refuses adult requests or rules; often deliberately does things that annoy other people; and often blames others for his mistakes or behavior.  (Tr. 145-46).

On March 14, 2001, Dr. Lafleur wrote that although he had prescribed Lithium for Matthew to control his bipolar disorder, Matthew was continuing to have some difficulties in school.  Dr. Lafleur recommended that Matthew be permitted to stop taking his French class, which caused him a lot of stress.  (Tr. 143).  On October 11, 2001, Dr. Lafleur reported that Matthew's behavior at school was worsening, that he was having more trouble concentrating, and that he was having a harder time with manic/hypomanic symptoms.  (Tr. 135).  Dr. Lafleur noted that Matthew was taking a medication called Eskalith CR for his bipolar disorder.

At the request of Disability Determination Services ("DDS"), Matthew was examined by Alfred E. Buxton, Ph.D., a clinical psychologist, on February 17, 2004.  On examination, Dr. Buxton concluded that Matthew's recent and remote memories were intact; his ability to attend and concentrate was good; pace was even with a regular rate of performance and a normal

response latency; intellect was normal; judgment and reflective cognition were good; insight was fair; cognitions were clear and cogent; mood was euthymic with spontaneous and animated effect; there was no evidence of any hallucinatory or delusional phenomena; there were no suicidal ideations; and occasionally, there were reactive assaultive ideations.  (Tr. 157).  Dr. Buxton diagnosed Matthew with bipolar disorder with degree of impairment moderate and prognosis fair and mixed disturbance of emotion and conduct with degree of impairment moderate and prognosis fair.  (Id.).

The foregoing appear to be the last of the medical records in the file that pertain to the claimant herein.  On January 13, 2006, after the administrative hearing but before the ALJ's decision, Bergeron's attorney submitted additional medical records pertaining to a "Matthew Bergeron" whose social security number is 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, whose date of birth is September 26, 1977, and who is, therefore, approximately 30 years old.[3]

The medical records pertaining to the 30-year-old Matthew Bergeron indicate that in June/July 2005, Mr. Bergeron was hospitalized in the University Medical Center's Psychiatric Unit after attempting suicide by taking 24 Tylenol PM tablets after a break-up with his girlfriend.  (Tr. 171, 185-88).  Additional treatment shows that this individual reported using crack cocaine and was diagnosed as having a cocaine-induced mood disorder, as well as bipolar disorder.  (Tr. 178, 183).[4]

---

[3] Claimant Matthew Bergeron's social security number is 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, his date of birth is September 26, 1988, and he is 18 years old.

[4] The medical records pertaining to the 30 year-old Matthew Bergeron show that this individual was admitted to UMC's Respite Care Unit on June 20, 2005, (Tr. 173-75), and was discharged on June 30, 2005 with a discharge of bipolar disorder and cocaine abuse, as well as cocaine-induced mood disorder and an adjustment disorder with depressed mood brought on by rejection by a former girlfriend.  (Tr. 178, 183).  Discharge notes state that the patient was non-compliant with treatment.  (Tr. 183).  Following discharge, this patient was referred to the Tyler Mental Health Hospital, where he was diagnosed with adjustment disorder and cocaine and sedative abuse.

8

Remarkably, the ALJ considered the medical evidence pertaining to the 30-year-old Matthew Bergeron in concluding that the *claimant* Matthew Bergeron is not disabled. Specifically, the ALJ noted that, since his treatment at the Tyler Mental Health Hospital, this individual's symptoms have been well-controlled with medication. (Tr. 14). The ALJ relied, in part, upon these records in concluding that the claimant Matthew Bergeron is not disabled.

### 3.     Listing 112.04 – Bipolar Disorder

Bergeron contends that Matthew satisfies the requirements of Listing 112.04 for mood disorders, and specifically, for bipolar disorder. In order to satisfy this listing, Matthew must satisfy the following:

> 112.04 Mood Disorders: Characterized by a disturbance of mood (referring to a prolonged emotion that colors the whole psychic life, generally involving either depression or elation), accompanied by a full or partial manic or depressive syndrome.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> [. . .]
>
> 3.     Bipolar or cyclothymic syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently or most recently characterized by the full or partial symptomatic picture of either or both syndromes);
>
>          And
>
> B.     [. . .] for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.04.

---

(Tr. 205-06). On August 3, 2005, the patient's diagnosis was adjusted to depressive disorder and anxiety disorder. (Tr. 203-04). Progress notes dated July 26, 2005 through October 11, 2005 show that the patient had substantially improved and that his symptoms were well-controlled with medication. (Tr. 208-14).

9

Paragraph (B)(2) of 112.02 identifies the age-appropriate criteria as follows:

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:

   a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

   b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

   c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

   d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.02(B)(2). See also Luckerson, 2000 WL 1222125.

"Marked" limitations are defined in 20 C.F.R §416.926(a)(c)(3)(i)(C) for a child of Matthew's age at the time of the hearing as "more than moderate" and "less than extreme." "Marked limitation may arise when several activities or functions are limited or even when only one is limited as long as the degree of limitation is such as to interfere seriously with the child's functioning." Id.

Bergeron argues that the ALJ failed to specifically address whether Matthew satisfies the requirements of Listing 112.04. Bergeron contends that the ALJ's finding that Matthew has a "marked" limitation in the area of "interacting and relating with others" is equivalent to a finding

10

that Matthew has a "marked' limitation in the area of "age-appropriate social functioning" for purposes of satisfying the requirements of Listing 112.04.  Bergeron also contends that the ALJ erred in failing to conclude that Matthew has a "marked" limitation in the area of "personal functioning," which would qualify as a second marked impairment in the age-appropriate areas of functioning, and would presumably lead to a finding that Matthew is disabled under Listing 112.04.

The record confirms that the ALJ's analysis fails to even mention Listing 112.04 for mood disorders, and therefore there are no specific findings regarding whether Matthew satisfies the requirements of that listing.  The ALJ considered only the issue of whether Matthew functionally equals a listed impairment.

Furthermore, the undersigned agrees that a finding that Matthew has a "marked" limitation in the area of "interacting and relating with others" in the assessment of functional equivalence is equivalent to a finding that Matthew has a "marked' limitation in the area of "age-appropriate social functioning" for purposes of satisfying the requirements of Listing 112.04.

With respect to the area of "personal functioning," the regulations state the following:

> Personal functioning in adolescents pertains to self-care. It is measured in the same terms as for younger children, the focus, however, being on the adolescent's ability to take care of his or her own personal needs, health, and safety without assistance. Impaired ability in this area is manifested by failure to take care of these needs or by self-injurious actions. This function may be documented by a standardized test of adaptive behavior or by careful descriptions of the full range of self-care activities.

20 C.F.R. Pt. 404, Subpt. P, App. 1**.**

The undersigned finds that there is strong evidence in the record supporting a finding that Matthew has a "marked" limitation in the area of "personal functioning."  This evidence is not,

11

as suggested by the claimant, the evidence of an attempted suicide and in-patient treatment in the UMC Psychiatric Unit, followed by treatment at the Tyler Mental Health Hospital.  As has already been shown, that evidence *does not pertain to the claimant Matthew Bergeron in this case,* and, as such, has no relevance in the instant case.

Rather, the evidence supporting a finding that Matthew has problems in the area of "personal functioning" appears in his English teacher's Questionnaire, completed in December 2003.  In that Questionnaire, the teacher reported "slight problems" in the areas of "handling frustration appropriately," "being patient when necessary," "responding appropriately to changes in own mood;" "obvious problems" in the area of "identifying and appropriately asserting emotional needs;" and a "serious problem" in the area of "using appropriate coping skills to meet daily demands of school environment."  (Tr. 91).  All of these sub-areas of functioning are related to the overall area of "personal functioning," and the teacher's findings are uncontroverted in the record.

Considering the foregoing, the undersigned concludes that Bergeron has marked limitations in two areas of age-appropriate functioning and therefore, satisfies the requirements of Listing 112.04.  Thus, the ALJ's conclusion that Bergeron is not disabled is not supported by substantial evidence.

**4.      Functional Equivalence of Listed Impairment**

The undersigned also concludes that the ALJ's conclusion that Matthew does not functionally equal a listed impairment is not supported.  Bergeron contends that, even if Matthew does not meet a listed impairment, the ALJ should have found his condition to be functionally

12

equivalent to a listed impairment.  For a child of Matthew's age, functional equivalence is evaluated by assessing the child's limitations in the following six functional domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  See 20 C.F.R. § 416.926a(b)(1).  If a child has "marked" limitations in two domains, or an "extreme" limitation in one domain, the child will be considered to have an impairment of "listing level severity."  See 20 C.F.R. §416.926a(d).

      In the instant case, the ALJ determined that Matthew has a "marked" degree of limitation in the domain of "interacting and relating with others," a "less than marked" degree of limitation in the domain of "attending and completing tasks," and no limitations in any of the remaining domains.  (Tr. 16).  With respect to the domain of "attending and completing tasks" the ALJ stated: "[Matthew[ has shown some trouble concentrating and paying attention at school.  However, progress notes reveal improvement in his symptoms with treatment."  (Tr. 16).

      Bergeron argues that the ALJ erred in failing to find that Matthew has a "marked" degrees of limitation in the areas of "attending and completing tasks," "caring for yourself," and "health and physical well-being."  Although the record supports the ALJ's conclusion that Matthew demonstrates no limitations in the areas of "moving and manipulating objects" and "health and physical well-being," the record contains very clear evidence that Matthew has at least "marked," limitations in the areas of "attending and completing tasks" and "caring for yourself."

      ***Attending and Completing Tasks***

The undersigned can find no evidence supporting the ALJ's finding that Matthew's problems with concentration and attention in school have improved with treatment.  In January 2001, Dr. Lafleur completed a "Snap-IV Rating Schedule," wherein he noted that, in addition to having numerous problems associated with his interpersonal relationships at school with teachers and fellow students, Matthew "has difficulty concentrating on school work or other tasks requiring sustained attention."  (Tr. 145-46).  The records do not show that Matthew's problems with concentration improved, and on March 14, 2001, Dr. Lafleur wrote that although he had prescribed Lithium for Matthew to control his bipolar disorder because Matthew was continuing to have some difficulties in school.  (Tr. 143).  On October 11, 2001, Dr. Lafleur reported that Matthew's behavior at school was *worsening, that he was having more trouble concentrating*, and that he was having a harder time with manic/hypomanic symptoms.  (Tr. 135) (emphasis added).  Dr. Lafleur noted that Matthew was taking a medication called Eskalith CR for his bipolar disorder, but that despite taking this medication, his symptoms had not improved.

Considering the foregoing, the undersigned concludes that there is no substantial evidence in the record supporting the ALJ's conclusion that Matthew's concentration problems have improved.  Rather, evidence shows that Matthew's limitations in this area are "marked."

### *Caring for Yourself*

As has already been discussed herein, the undersigned concludes that Matthew demonstrates that he has a variety of problems, some of them serious, in the area of "personal functioning."  The record shows that Matthew has serious problems taking care of his emotional needs, which cause him to behave in an inappropriate manner.  Indeed, Matthew;'s teacher reported that he has problems "responding appropriately to changes in own mood," "identifying

14

and appropriately asserting emotional needs," and "using appropriate coping skills to meet daily demands of school environment." (Tr. 91). These findings support a conclusion that Matthew has "marked" limitations in the area of "caring for yourself."

Considering the foregoing, the undersigned concludes that Matthew's condition is functionally equivalent to a listed impairment.

*Conclusion*

Considering the foregoing, it is recommended that the ALJ's decision be **REVERSED** and that Matthew Bergeron be awarded benefits consistent with an onset date of January 1, 2001.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See Richard v. Sullivan, 955 F.2d 354 (5th Cir. 1992) and Shalala v. Schaefer, 509 U.S. 292 (1993).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on August 21, 2007.

15

_____
Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)